UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TROY UNDERWOOD, *et al.*,<br><br>Plaintiffs,<br>v.<br><br>STEVE ORIOL, *et al.*,<br><br>Defendants. | Case No. 3:23-cv-00029-MMD-CSD<br><br>ORDER |

**I.   SUMMARY**

Plaintiffs Troy Underwood and his company Tru Reno Enterprise, LP (collectively Plaintiffs"), who owned and operated a short-term vacation rental ("STR") property in unincorporated Washoe County ("County"), brings this suit under 42 U.S.C. § 1983 after the County subjected Plaintiffs' property to new STR regulations. (ECF No. 1 ("Complaint").) Before the Court is Defendants Steve Oriol, Vaughn Hartung, and Washoe County's (collectively, "Defendants"[1]) motion to dismiss Plaintiffs' claims against them (ECF No. 11 ("Motion")).[2] As further explained below, the Court will grant the Motion.

**II.   BACKGROUND**

The following allegations are adapted from the Complaint.

In February 2018, Plaintiff Troy Underwood, through his company Tru Reno Enterprise, LP, purchased a six-bedroom residence ("Property") and began operating it as a vacation rental. The Property sits in the foothills of Mount Rose, in unincorporated Washoe County, Nevada. In 2019, the County began developing regulations to govern

---

[1] Plaintiffs also bring this suit against Defendant Michael Loader in his individual capacity. (ECF No. 1 at 1, 3-4.) Loader has not joined in this Motion.

[2] Plaintiff filed a response (ECF No. 17), to which Defendants replied (ECF No. 20).

the permitting and operation of STRs throughout the County's unincorporated areas ("STR Regulations" or "Regulations"), which ultimately became effective on April 15, 2021. (ECF No. 1 at 4, 6.)

### A. The County's STR Regulations

In early 2021, the County adopted three ordinances: Ordinances 1665, 1666, and 1667.[3] Taken together, these ordinances make up the STR Regulations amending the Washoe County Code ("WCC" or "Code") to govern STRs throughout the County's unincorporated areas. (*Id.* at 4-6.) Ordinance 1665 created Article 319 of the County's Development Code[4] to allow for the inclusion of STRs in legally permitted homes. *See generally* WCC §§ 110.319.00-110.319.50. Ordinance 1665 set out the requirements for STR permit applications (§ 110.319.10), established parking, noise, trash, and occupancy standards for STRs (§ 110.319.15), and additional safety standards (§ 110.319.20).[5]

Ordinance 1666 modified two provisions of Chapter 50 of the Washoe County Code, known as the Nuisance Code. First, the ordinance added a definition of STRs and, importantly, defined unpermitted STRs as a "public nuisance."[6] *Id.* at §§ 50.304(21), 50.308(1). Under Section 50.308(1), an STR operating without a legal permit is "a public nuisance due to the potential nuisance impacts related to parking, garbage, noise, and higher occupancy, and by the danger posed to surrounding properties created by an

---

[3]The Washoe Board of County Commissioners adopted the ordinances on March 23, 2021; the ordinances then became effective on April 15, 2021. (ECF No. 1 at 4.)

[4]The Washoe County Development Code is located in Chapter 110 of the WCC.

[5]The County enforces the STR Regulations through "[a] combination of the enforcement mechanisms contained in Washoe County Code Chapters 50.300 (Nuisance Code), 110.910 (Enforcement), and 125 (Administrative Enforcement)" to "ensure that STR activity does not alter the character of existing residential neighborhoods nor result in detrimental impacts to the public health, safety and welfare." WCC § 110.319.30.

[6]Under Section 50.304, the County defines STRs as "existing single-family dwelling units where, for compensation, lodging is provided within either the entire home or a portion of the home for a rental period of less than 28 days. Short-term rentals are distinguishable from commercial lodging use types in that no meals may be provided within short-term rentals as part of the rental agreement and the home may only be rented out for short-term rental use to one group at a time." WCC § 50.304(21).

unpermitted use that has not passed required inspections for public health, safety, or general welfare standards applicable to STRs." *Id.* at § 50.308(1).

Finally, Ordinance 1667 established enforcement provisions for STRs, amending Chapter 125, known as the Administrative Enforcement Code. This ordinance provided for complaints, warnings, administrative penalty notices, and hearings to address violations of the STR Regulations. *See id.* at § 125.160. Ordinance 1667 also specified a procedure for the County's enforcement officials to issue "stop activity orders" and "remediation orders." *See id.* at § 125.157. A code enforcement official "may issue and serve a stop activity order" when she observes someone "operating a[n STR] without the required permit (to include the act of advertising said STR), or other activity in progress that is or is likely to be a violation of the Code, or the work or activity must be stopped to prevent unsafe conditions, . . . or is being conducted without first obtaining the required permits or approvals." *Id.* at § 125.157(1). "Upon issuance of a stop activity order all activity described in the order must cease." *Id.*

**B.    Plaintiffs' STR Operations & Regulatory Violations**

Plaintiffs had already been operating the Property as a vacation rental business when the Regulations came into effect on April 15, 2021. (ECF No. 1 at 6.) Because Plaintiffs' operation of the Property fell within the definition of STRs under the Regulations, Plaintiffs were required to apply for an STR permit. On July 31, 2021, Plaintiffs applied for a "Tier 1" STR permit, which limits a property's occupancy to ten people or less. (*Id.* at 4, 6.) *See also* WCC § 110.304.15(d)(1) (defining occupancy limits for Tier 1 Permits).

On October 15, 2021, Defendant Steve Oriol, in his official capacity as a County code enforcement officer, emailed Plaintiffs about a "pending code enforcement action" against them. (ECF Nos. 1 at 16; 1-1 at 58.) Oriol lamented the "unacceptably slow" progress Plaintiffs had made on their STR permit application, which had been pending for over two months. (ECF No. 1-1 at 58.) If Plaintiffs failed to make "meaningful progress (as determined by the County)" on their permit application within the next two weeks—by October 29, 2021—then the County could take any of several enforcement actions,

including a stop activity order, an administrative penalty and fine, revocation of the STR permit application, and "other administrative/criminal enforcement actions." (*Id.*) Additionally, Oriol reported having received multiple garbage complaints relating to the Property, and warned that "[t]he size and scope of the rental activity at this address is negatively impacting the surrounding community, and exceeds what is responsible or reasonable." (*Id.*)

The October 29 compliance deadline passed. Days later, on November 2, 2021, Oriol again emailed Plaintiffs, but this time with a more urgent directive. (ECF Nos. 1 at 2, 6-7; 1-1 at 9.) "Given the continued delays, and the ongoing garbage problem," Oriol stated, "it has been decided that you must cancel all bookings and remove all listings for the property until you have your STR permit issued by the County." (ECF No. 1-1 at 9.) Plaintiffs had until 5:00 PM the following day to remove all listings and cancel all bookings; failure to do so would result in fines, a stop activity order, and "likely additional delays" in processing Plaintiffs' permit application. (*Id.*)

On November 17, 2021, the County issued Plaintiffs' STR permit at the Tier 1 level, allowing for a maximum occupancy of ten individuals.[7] Although the Property was now permitted, the County issued three administrative penalty notices against Plaintiffs from December 2021 to February 2022 for various violations of the STR Regulations. (ECF No. 1 at 9-10, 12.) During this period, in January 2022, the County also issued a stop activity order against Plaintiffs, ordering that they stop booking groups of more than ten people at the Property. (ECF Nos. 1 at 10-11; 1-1 at 18.)

---

[7]In the Complaint, Plaintiffs inconsistently allege the date on which the County issued Plaintiffs' STR permit (Permit No. WSTR21-0420). Plaintiffs first allege that the permit issued on November 2, 2021, but later allege that it issued on November 17, 2021. (ECF No. 1 at 6, 8.) The Court takes judicial notice of Plaintiffs' STR Permit, a record of the County, which states that the issuance date was November 17, 2021. (ECF Nos. 11 at 6 & n.2; 11-4 at 2.) *See also* Fed. R. Evid. 201; *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004) ("Under Federal Rule of Evidence 201, we may take judicial notice of the records of state agencies and other undisputed matters of public record.").

4

Finally, in April 2022, the County issued a notice of revocation of Plaintiffs' STR permit, which ultimately led to revocation in May 2022. (ECF No. 1 at 12.) In June 2022, Plaintiffs sold both the Property and the related STR business. (*Id.* at 13.)

### C. This Action

Plaintiffs assert four constitutional claims[8] against Washoe County only: (1) violation of procedural due process; (2) violation of the Contracts Clause; (3) violation of the fundamental right of assembly; and (4) violation of equal protection. (ECF No. 1 at 14-20.) Plaintiffs assert two additional state-law claims against all Defendants, including Defendants Steve Oriol and Vaughn Hartung in their official capacities. (*Id.* at 20-22.) Plaintiffs seek both monetary and declaratory relief. (*Id.* at 23.)

## III. DISCUSSION

Defendants first move to dismiss all of Plaintiffs' claims for declaratory relief for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), arguing that Plaintiffs lack standing to seek declaratory relief on the constitutionality of the County's STR regulations. (ECF No. 11 at 7-8.) Second, they argue, Plaintiffs' claims against Defendants Oriol and Hartung in their official capacities must be dismissed because they are not "persons" under 42 U.S.C. § 1983. (*Id.* at 8.) Lastly, Defendants seek dismissal of all but one claim against them under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (*Id.* at 8-24.) The Court addresses Defendants' Motion as to each ground for dismissal and each claim. The Court then addresses whether it will grant Plaintiffs leave to amend.

### A. Subject Matter Jurisdiction

As a preliminary matter, Defendants argue that Plaintiffs lack standing to seek declaratory relief on the constitutionality of the County's STR Regulations—implicating all four of Plaintiffs' constitutional claims. (*Id.* at 7-8.) Because Plaintiffs have already sold the regulated Property and STR business and are no longer holders of an STR permit,

---

[8]Plaintiffs bring all four claims under both the U.S. and Nevada Constitutions. (ECF No. 1 at 14-20.)

5

they fail to sufficiently allege they are reasonably threatened by repetition of their alleged injury: the lost value in their sale of the Property, among other damages. (*Id.* at 8.) Thus, Defendants contend, Plaintiffs lack standing to seek declaratory relief on these claims, and so the Court lacks subject matter jurisdiction, warranting dismissal. (*Id.*)

The Court agrees with Defendants and thus grants the Motion on all four constitutional claims to the extent Plaintiffs seek prospective declaratory relief. "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 185 (2000) (citations omitted). "Thus, a plaintiff who has standing to seek damages for a past injury, or injunctive relief for an ongoing injury, does not necessarily have standing to seek prospective relief such as a declaratory judgment." *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010) (citations omitted).

Here, Plaintiffs do not seek a cognizable Article III remedy; they instead seek prospective declaratory relief for a past alleged wrong—*i.e.*, lost value in the Property sale, among other damages—that will not likely recur. Plaintiffs allege having sold the subject Property and STR business in June 2022, weeks after losing their corresponding STR permit. (ECF No. 1 at 13.) Nevertheless, they seek a declaratory judgment that the County's Regulations violate both the U.S. and Nevada Constitutions. (*Id.* at 23.) But Plaintiffs allege no facts demonstrating that the declaratory judgment they seek will redress their past injury. Further, Plaintiffs appear to concede that "declaratory relief is not necessary to resolve the case and controversy at hand." (ECF No. 17 at 4.) Because Plaintiffs fail to demonstrate they are reasonably threatened by the repetition of their alleged injury, *see Laidlaw*, 528 U.S. at 185, they lack standing to seek declaratory relief. Accordingly, the Court grants Defendants' Motion on all four constitutional claims to the extent Plaintiffs seek a declaratory judgment on the constitutionality of the County's STR Regulations.

### B. Official-Capacity Suit Under Section 1983

Next, Defendants argue that Plaintiffs' state-law claims against Defendants Oriol and Hartung must be dismissed because, as County officials, they are not "persons" under the statute. (ECF No. 11 at 8.) Plaintiffs do not counter this argument and appear to concede this point. (*See generally* ECF No. 17.) The Court agrees with Defendants that claims against Oriol and Hartung in addition to the County are redundant and warrant dismissal under Rule 12(b)(6). (ECF No. 11 at 8.) County officials like Oriol and Hartung, sued in their official capacity for damages, are not "persons" for Section 1983 purposes. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.") (citations omitted); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Aguon v. Commw. Ports Auth.*, 316 F.3d 899, 901 (9th Cir. 2003); *see also Cortez v. Cnty. of Los Angeles*, 294 F.3d 1186, 1189-90 (9th Cir. 2002) (holding that a county is liable under Section 1983 for a sheriff's actions taken as an administrator of the county jail). Accordingly, the Court grants Defendants' Motion on this basis and dismisses claims against Defendants Oriol and Hartung.

### C. Contracts Clauses

Plaintiffs allege that Defendants violated the Contracts Clauses of the U.S. and Nevada Constitutions when Oriol, in his official capacity as a code enforcement officer, ordered Plaintiffs to cancel all existing bookings on November 2, 2021. (ECF No. 1 at 17.) *See also* U.S. Const. art. 1, § 10, cl. 1; Nev. Const. art. 1, § 15.[9] Defendants counter that Plaintiffs fail to state a colorable Contracts Clause claim because they have not alleged sufficient facts showing that the County (1) substantially impaired Plaintiffs' pre-existing

---

[9]The Nevada Supreme Court has interpreted the Contracts Clause of the Nevada Constitution to be on par with that of the U.S. Constitution. *See ACLU of Nev. v. Masto*, 670 F.3d 1046, 1060 (9th Cir. 2012) (citing *Holloway v. Barrett*, 487 P.2d 501, 505-06 (Nev. 1971)); *see also Woods v. State*, Case No. 57481, 2013 WL 7156337, at *4-5 (Nev. Dec. 6, 2013) (unpublished opinion) (applying the same two-step Contracts Clause framework outlined in *U.S. Tr. Co. of New York v. New Jersey*, 431 U.S. 1 (1977)). Thus, the Court applies the federal standard to both state and federal constitutional claims.

STR contracts or (2) advanced a significant and legitimate public purpose in an appropriate and reasonable way. (ECF Nos. 11 at 8-15; 20 at 4-8.)

The Contracts Clause provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const., art. 1, § 10. It thus "restricts the power of States to disrupt contractual arrangements" through legislative action. *Sveen v. Melin*, 138 S. Ct. 1815, 1821 (2018). Though this Clause "limits the power of the States to modify their own contracts as well as to regulate those between private parties," it "does not prohibit the States from repealing or amending statutes generally, or from enacting legislation with retroactive effects." *U.S. Tr. Co. of New York v. New Jersey*, 431 U.S. 1, 17 (1977) (citations omitted). The Contracts Clause "applies to any kind of contract," *Sveen*, 138 S. Ct. at 1821 (citation omitted), and to local and municipal ordinances, *St. Paul Gaslight Co. v. City of St. Paul*, 181 U.S. 142, 148 (1901).

Despite being written in "broad and far-reaching" terms, the Supreme Court has narrowly construed the Contracts Clause to ensure that local governments can effectively exercise their police powers. *In re Seltzer*, 104 F.3d 234, 235 (9th Cir. 1996); *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003) (per curiam); *see also U.S. Tr. Co. of New York*, 431 U.S. at 22. Federal courts deploy a two-step test to assess whether laws affecting pre-existing contracts violate the Contracts Clause. *See Sveen*, 138 S. Ct. at 1821-22. Courts first determine whether the challenged law has "operated as a substantial impairment of a contractual relationship." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244-45 (1978). For this first question, courts consider "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Sveen*, 138 S. Ct. at 1822 (citations omitted). If, on balance, the factors show no substantial impairment, the Court's analysis ends here. *See id.* But if the Court finds a substantial impairment, "the inquiry turns to the means and ends of legislation," that is, "whether the state law is drawn in an 'appropriate' and 'reasonable' way to advance 'a

significant and legitimate public purpose.'" *Id.* (quoting *Energy Rsrvs. Group, Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411-12 (1983)).

Accepting their allegations as true, Plaintiffs fail to state a colorable Contracts Clause claim. According to the Complaint, Plaintiffs began operating the Property as a vacation rental business in 2018. (ECF No. 1 at 4, 6.) In 2019, the County began developing its STR Regulations, which came into effect and governed the Property starting April 15, 2021. (*Id.* at 4.) However, Plaintiffs did not begin the application process for the required STR permit until July 31, 2021. (*Id.* at 6.) Defendant Oriol emailed Plaintiffs on October 15, 2021, lamenting Plaintiffs' "unacceptably slow" progress on their STR permit application, and warning that their "[f]ailure to make meaningful progress . . . within the next two weeks (deadline of 10/29/21)" may result in various penalties, including revocation. (ECF No. 1-1 at 58.) After these two weeks had passed, Oriol again emailed Plaintiffs on November 2, 2021, directing them to "cancel all bookings and remove all listings for the property" within the next day until they obtained their STR permit from the County. (*Id.* at 9.)

To be sure, the County's order to cancel all bookings and remove all listings for the Property within one day was a swift and disruptive directive. But the County's actions do not amount to a substantial impairment under the Contracts Clause. First, Plaintiffs fail to allege sufficient facts showing that compliance with the STR Regulations prevented them from "safeguarding or reinstating [their] rights." *Sveen*, 138 S. Ct. at 1822. Plaintiffs had two weeks to work with the County to advance their permit application, obtain a permit—a likely "minimal paperwork burden"—and thus avoid the County's penalties. *Id.* at 1823 (holding that a state's automatic-revocation-on-divorce statute for life insurance policies did not substantially impair pre-existing contracts because "a policyholder c[ould] reverse the effect of the . . . statute with the stroke of a pen"; as such, "[t]he statute thus reduces to a paperwork requirement (and a fairly painless one, at that)"). Further, Plaintiffs do not allege that the County refused to issue Plaintiffs the STR permit to which they were entitled. Plaintiffs in fact obtained their Tier 1 permit shortly thereafter, but later

faced additional penalties after exceeding the permit's ten-person occupancy limit. (ECF Nos. 1 at 8-12; 11-4 at 2.)

Second, Plaintiffs "could not reasonably have expected the regulatory landscape to remain unchanged definitely" for STRs in the County. *Energy Rsrvs. Group, Inc.*, 459 U.S. at 411. The County had been publicly developing the Regulations since 2019. (ECF No. 1 at 4.) By the time Oriol ordered Plaintiffs to cancel all bookings, these Regulations had been in effect for over six months. (ECF Nos. 1 at 4, 6-7; 1-1 at 9.) Given the "existence of extensive regulation" over STRs and other land uses through present and future zoning laws, Plaintiffs likely knew their contracts would be subject to alteration through the County's permitting requirements and code enforcement. *Id.* at 416.

For these reasons, the Court finds that the County's STR enforcement actions did not substantially impair Plaintiffs' pre-existing contracts with customers. Thus, the Regulations did not violate the Contracts Clause, and the Court's inquiry ends here. *See Sveen*, 138 S. Ct. at 1822. The Court declines to reach Defendants' arguments that the Regulations appropriately and reasonably advanced a significant and legitimate public purpose. Accordingly, the Court grants the Motion on this claim.

### D.   First Amendment Right of Assembly

Plaintiffs next allege the County violated their First Amendment right of assembly when it penalized Underwood for having a party, *i.e.*, a gathering exceeding the permitted occupancy limit under the STR Regulations, when he "gathered with family and friends at the Property and did not have STR customers there" on December 4, 2021. (ECF No. 1 at 17-18.) *See also* WCC § 110.319.15(a)(4) ("No events, parties, or weddings (regardless of payment or familial association), are allowed or may be advertised [at a permitted STR property]. A party is defined as any gathering in excess of the approved on-site maximum occupancy associated with the STR permit."). The Court agrees with Defendants that Plaintiffs fail to state a colorable First Amendment right of assembly claim. (ECF No. 11 at 17-18.)

Freedom of association has a foundation in, and "close nexus" with, freedom of speech.[10] *NAACP v. Alabama*, 357 U.S. 449, 460 (1958); *see also Thorne v. Jones*, 765 F.2d 1270, 1273-74 (5th Cir. 1985). The Supreme Court has recognized a First Amendment right to freedom of association in two contexts: (1) freedom of expressive association and (2) intimate association. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984). Freedom of expressive association protects "a right to associate for the purposes of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Id.* at 618; *see also Runyon v. McCrary*, 427 U.S. 160, 175 (1976) (recognizing a First Amendment right to "'to engage in association for the advancement of beliefs and ideas.'") (quoting *NAACP*, 357 U.S. at 460). Freedom of intimate association protects one's "choices to enter into and maintain certain intimate human relationships" "that attend the creation and sustenance of a family," such as marriage, childbirth, the raising and education of children, and cohabitation with one's relatives. *Roberts*, 468 U.S. at 617-18, 619. However, neither form of constitutional protection "recognizes a generalized right of 'social association.'" *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989); *see also San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1033 (9th Cir. 2004) (affirming dismissal of a religious college's First Amendment challenge to a city's denial of its rezoning application for its property in part because "the fact that [its] congregants cannot assemble at that precise location does not equate to a denial of assembly altogether") (citation omitted).

Accepting Plaintiffs' allegations as true, and assuming Underwood himself has standing to bring this claim, the Court cannot reasonably infer from the Complaint that the County's enforcement of its Regulations violated Plaintiffs' right of association. As Plaintiffs allege, the Regulations unambiguously prohibit events and gatherings

---

[10]The analysis for freedom of speech claims under Article 1, Section 9 of the Nevada Constitution is "identical" to that under the First Amendment to the U.S. Constitution. *Univ. & Cmty. Coll. Sys. of Nev. v. Nevadans for Sound Gov't*, 100 P.3d 179, 187 (Nev. 2004).

exceeding the STR occupancy limits. And because the Regulations apply "regardless of payment and familial association," they apply to STR owners and their customers. (ECF Nos. 1 at 18; 11 at 17-18; 20 at 9.) Plaintiffs do not allege any facts implicating intimate human relationships "that attend the creation and sustenance of a family," such as marriage, childbirth, the raising and education of children, and cohabitation with one's relatives. (*See* ECF No. 1 at 18.) *See also Roberts*, 468 U.S. at 617-18, 619. Instead, the Complaint vaguely alleges a one-time gathering between family and friends—a social encounter that the Regulations prohibit at this specific Property. *See City of Morgan Hill*, 360 F.3d at 1033. Nor do Plaintiffs allege that Underwood and his guests gathered that day to engage in activities traditionally protected by the First Amendment—"speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts*, 468 U.S. at 618; *see also Runyon*, 427 U.S. at 175. Because Plaintiffs fail to allege sufficient facts that allow the Court to reasonably infer the County violated Plaintiffs' right of assembly, the Court grants the Motion on this claim.

### E. Equal Protection

Plaintiffs appear to allege that the STR Regulations violate the equal protection clauses of both the U.S. and Nevada Constitutions[11] because while they govern STR owners—residential dwelling units rented for less than 28 days at a time—they do not apply to similarly situated timeshare shareholders. (ECF Nos. 1 at 19; 17 at 11-12.) The County counters with two arguments. First, Plaintiffs' equal protection claim fails to the extent they facially challenge the STR Restrictions and seek declaratory relief.[12] Second, whether challenging their unique treatment or the County's classification of STR owners

---

[11]The Nevada Supreme Court has interpreted the Equal Protection Clause of the Nevada Constitution "to be the same as the federal standard and ha[s] held that where no suspect classification or fundamental right is involved, the role of th[e] court is to determine whether the classification bears a rational relationship to the legislative purpose sought to be effected." *Armijo v. State*, 904 P.2d 1028, 1029 (Nev. 1995) (citing *State Farm Fire & Cas. Co. v. All Electric, Inc.*, 660 P.2d 995 (Nev. 1983)); *see also Rico v. Rodriguez*, 120 P.3d 812, 817 (Nev. 2005).

[12]As previously explained, the Court agrees Plaintiffs' equal protection claim fails to the extent they seek prospective declaratory relief relating to the Regulations.

altogether, Plaintiffs fail to state a claim upon which relief can be granted. (ECF No. 11 at 19-22.) The Court agrees with Defendants.

Plaintiffs fail to state a viable equal protection claim, whether under a class-of-one theory or based upon membership in a class. (ECF No. 11 at 20-21.) To the extent Plaintiffs challenge the Regulations under a class-of-one theory, Plaintiffs' claim fails.[13] "When an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a 'class of one' claim." *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). To assert a class-of-one equal protection claim, Plaintiffs must establish that the County "intentionally, and without rational basis, treated [them] differently from others similarly situated." *Id.* (citations omitted). "A class of one plaintiff must show that the discriminatory treatment was intentionally directed just at him, as opposed to being an accident or a random act." *Id.* (citation, quotation marks, and alteration omitted).

Even assuming (1) the County intentionally singled out Plaintiffs for enforcement, and (2) STR owners and timeshare shareholders are "similarly situated,"[14] Plaintiffs' equal protection claim fails because the Regulations rationally serve at least one conceivable government purpose. Plaintiffs do not trigger higher scrutiny by alleging having a fundamental right violated or belonging to a protected class for purposes of the Equal Protection Clause. Instead, Plaintiffs appear to challenge their treatment as STR property owners. (ECF Nos. 1 at 19; 17 at 11-12.) *See also Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 312 (1976) (per curiam) (citing *San Antonio Sch. Dist. v. Rodriguez*, 411 U.S. 1, 16 (1973)); *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440

---

[13]In their opposition, Plaintiffs do not dispute Defendants' characterization of their claim as a class-of-one equal protection claim. (*See* ECF No. 17 at 11-12.)

[14]Defendants challenge this comparison between STR owners and timeshare shareholders as a "false equivalency," and the Court also questions whether owners of commercially zoned timeshares are "similarly situated" for equal protection purposes. (ECF Nos. 11 at 21; 20 at 11.) *See also Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) ("Similarly situated" persons are those "who are in all relevant aspects alike.")

13

(1985) (recognizing race, alienage, and national origin as protected classes); *Hamilton v. Cnty. of Madera*, Case No. 1:20-cv-00484-EPG, 2021 WL 5771669, at *10 (E.D. Cal. Dec. 6, 2021) (finding that "residential property owners are not a protected class for purposes of the Equal Protection Clause"). Thus, under rational basis review, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne*, 473 U.S. at 440 (citations omitted). In other words, Plaintiffs' claim fails "as long as 'there is any reasonably conceivable state of facts that could provide a rational basis' for the challenged law." *Merrifield v. Lockyer*, 547 F.3d 978, 989 (9th Cir. 2008) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)).

Plaintiffs allege no facts demonstrating that, under rational basis review, "the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Vance v. Bradley*, 440 U.S. 93, 111 (1979) (citations omitted); *see also Merrifield*, 547 F.3d at 989 ("The government is not required to substantiate its reasoning with facts [under rational basis review]."). Plaintiffs themselves acknowledge a reasonably conceivable governmental purpose, *i.e.*, that the Regulations differentiate between STR owners and timeshare shareholders "to promote safe, secure, and healthy communities." (ECF No. 1 at 19 (citation and quotation marks omitted).) Moreover, the County implements its STR permitting and enforcement procedures to mitigate "the potential nuisance impacts related to parking, garbage, noise, and higher occupancy" and the "dangers posed to surrounding properties" when an unpermitted STR does not pass "required inspections for public health, safety, or general welfare standards applicable to STRs." WCC § 50.308(1). Because the STR Regulations serve at least one conceivable government purpose, Plaintiffs' equal protection claim fails. *See Merrifield*, 547 F.3d at 989. Because the Court cannot reasonably infer from the Complaint that Defendants violated the Equal Protection Clause, the Court grants Defendants' Motion on this claim.

### F. State-Law Claims and Discretionary-Act Immunity

For Plaintiffs' state-law claims, Defendants argue that the County is statutorily immune from suit for its discretionary decisions in enforcing its STR Regulations. (ECF Nos. 11 at 22-24; 20 at 11-13.) Plaintiffs do not appear to dispute that the discretionary-act immunity doctrine applies in this case; they instead lament the "abusive" and "hostile" way the County "wielded this unrestricted menu of enforcement capabilities" for the Regulations. (ECF No. 17 at 12-14.) The Court agrees with Defendants.

NRS § 41.032(2) creates a "discretionary-function exception to the state's general waiver of sovereign immunity" and "provides complete immunity from claims based on a state employee's exercise or performance of a discretionary function or duty." NRS §§ 41.031(1), 41.032(2); *Martinez v. Maruszczak*, 168 P.3d 720, 726 (Nev. 2007). In, *Martinez v. Maruszczak*, the Nevada Supreme Court clarified that government decisions are entitled to discretionary-act immunity if they "(1) involve an element of individual judgment or choice and (2) [are] based on considerations of social, economic, or political policy." 168 P.3d at 729.

Applying the *Martinez* test to the Complaint, the Court finds that the County's decisions to enforce its STR Regulations against Plaintiffs fall within NRS § 41.032(2)'s discretionary-function exception. As for the first *Martinez* criterion, the County's decisions to enforce its Regulations required the exercise of individual judgment and choice. *See id.* For example, Section 125.160(2) of the Code gives code enforcement officials discretion in issuing warnings for regulatory violations; they must determine whether (1) a code violation has occurred at a subject property, (2) the violation poses a "serious risk to public health, safety or welfare," and (3) if a noncompliant owner has made "reasonable progress in the repair, correction, or abatement of violations" or if other "extenuating circumstances" prohibit timely compliance. WCC § 125.160(2). Similarly, Ordinance 1667 granted code enforcement officials discretion in deciding when to issue stop activity orders. County officials must make judgment calls as to whether an activity "is or is likely to be a violation of the Code" or "must be stopped to prevent unsafe conditions" or

"irreparable harm or damages." WCC § 125.157(1). The County exercised this discretionary enforcement when it issued warnings, penalty notices, and a stop activity order against Plaintiffs for their STR operations. *See Ransdell v. Clark Cnty.*, 192 P.3d 756, 762-63 (Nev. 2008) (holding that county inspectors' actions were "discretionary" under *Martinez* in part because they "use[d] their own judgment and conduct[ed] individual assessments" of property conditions to determine if debris removal was required for code compliance). The County's actions thus satisfy the first prong of the *Martinez* test.

The County's enforcement actions also are based on considerations of social and economic policy, thus satisfying the second *Martinez* criterion. As Defendants point out, the County's goals in enforcing its STR Regulations are motivated by a codified commitment to the "public health, safety, and welfare" of its local communities. (ECF No. 11 at 24; 20 at 12.) *See also id.* at 763-64; WCC §§ 50.308(1) & 125.160(2). Because the County's enforcement actions satisfy both *Martinez* criteria, Defendants are entitled to discretionary-act immunity under NRS § 41.032(2). Because both of Plaintiff's state-law claims against the County are based on discretionary actions taken by the County or any County "officer, employee, or immune contractor," *see* NRS § 41.032(2); *Martinez*, 168 P.3d at 726, the Court accordingly grants the Motion on these two claims.

### G. Leave to Amend

Plaintiff requests leave to amend if the Court dismisses any of Plaintiff's claims. The Court has discretion to grant leave to amend and should freely do so "when justice so requires." Fed. R. Civ. P. 15(a); *see also Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). Nonetheless, the Court may deny leave to amend if it will cause: (1) undue delay; (2) undue prejudice to the opposing party; (3) the request is made in bad faith; (4) the party has repeatedly failed to cure deficiencies; or (5) the amendment would be futile. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

Because amendment would be futile, the Court denies leave to amend to the extent that Plaintiffs (1) seek a declaratory judgment on the constitutionality of the STR

Regulations, (2) bring claims against Defendants Oriol and Hartung in their official capacities, and (3) assert state-law claims based on the County's discretionary actions. *See* NRS § 41.032(2); *Martinez*, 168 P.3d at 726. Otherwise, the Court grants leave to amend the Complaint to cure the deficiencies outlined in this Order.

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Defendants' motion to dismiss (ECF No. 11) is granted.

It is further ordered that dismissal is with prejudice and without leave to amend to the extent Plaintiffs (1) seek declaratory relief for their constitutional claims, (2) sue Defendants Steve Oriol and Vaughn Hartung in their official capacities, and (3) assert state-law claims based on the County's performance of discretionary functions or duties. Otherwise, dismissal is without prejudice and with leave to amend.

It is further ordered that Plaintiffs have 15 days to file an amended complaint. Failure to timely file an amended complaint will result in dismissal with prejudice.

DATED THIS 12th Day of July 2023.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE