UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TROY UNDERWOOD, *et al.*,<br><br>       Plaintiffs,<br> v.<br>STEVE ORIOL, *et al.*,<br><br>       Defendants. | Case No. 3:23-cv-00029-MMD-CSD<br><br>ORDER |

**I. SUMMARY**

Plaintiffs Troy Underwood and his company Tru Reno Enterprise, LP ("Plaintiffs" or "Counter-defendants"), who owned and operated a short-term vacation rental ("STR") property in Washoe County, bring this suit under 42 U.S.C. § 1983 after the County subjected Plaintiffs' property ("Property") to new STR regulations. (ECF No. 29 ("Complaint").) Defendants Vaugh Hartung, Washoe County, and Steve Oriol[1] ("Counterclaimants") then raised counterclaims against Plaintiffs for breach of contract and breach of the implied covenant of good faith and fair dealing. (ECF No. 30 at 15-16 ("Counterclaim").) Before the Court is Plaintiffs' motion to dismiss the counterclaims (ECF No. 34 ("Motion")).[2] As Counterclaimants have plausibly alleged the existence of a valid contract between the parties, the Court will deny the Motion.

/ / /

/ / /

---

[1]Plaintiffs also bring this suit against Defendant Michael Loader in his individual capacity, as well as Doe Defendants. (ECF No. 29 at 1.) Loader did not join in this counterclaim. (ECF No. 30.)

[2]Counterclaimants filed a response (ECF No. 35), to which Plaintiffs replied (ECF No. 36).

## II. BACKGROUND

The following allegations are adapted from the Counterclaim.

In April 2022, Washoe County issued an Official Notice of Revocation for an STR permit issued to Tru Reno Enterprise, LP, and Troy Underwood ("Permit"). (ECF No. 33 at 13.) The Revocation Notice stated that the Permit had been automatically revoked and, upon resolution of the revocation action, a new STR permit could not be issued for the Property for one year. (ECF No. 33-1 at 2-3.) *See also* WASHOE CNTY. CODE § 110.319.40. Plaintiffs' attorney responded ten days later with a Notice of Appeal to the Washoe County Board of County Commissioners ("the Board"). (ECF No. 33 at 13.) The parties then began negotiating a settlement because Underwood was selling the Property. (*Id.*; ECF No. 33-4.)

Another week later, Plaintiffs' attorney sent an email stating that Underwood no longer wished to proceed with the appeal. (ECF Nos. 33 at 14; 33-3 at 2.) After further negotiations, the County responded with an email containing two proposed agreements that would formally withdraw the appeal of the revocation and voluntarily surrender the STR Permit within the next two months. (ECF Nos. 33 at 14; 33-4) The two documents were substantially the same, except one included the following additional language. (ECF No. 33-4 at 12.)

> In exchange, the county will provide you a letter, for use in the sale of your property, stating that a new owner will be able to receive a new Tier 1 STR permit regardless of past enforcement issues at the subject property or neighbor opposition to STR activity. By agreeing to voluntarily surrender your permit, the permit will not be considered "revoked" pursuant to Washoe County Code ("WCC") 110.319.40(c)(1) and will therefore not trigger the code provision barring issuance of any new STR permits for this property for a period of one year. A new owner will not be burdened by such a prohibition and will not "inherit" the existing violations tied to the existing permit. However, let me be clear that your Tier 1 permit will not automatically transfer to a new owner, either by transfer of title or otherwise. The new owner must obtain a new permit by submitting an application that complies with the requirements of the STR Ordinance (for example, getting insurance, submitting a notarized owner affidavit, etc.) and be issued a new permit. Any new owner must be issued a permit in their name prior to engaging in STR activity.

(*Id.*) The emails also contained the County's promise to allow the new owner to

immediately obtain a new STR permit and noted that, once Underwood signed either document, the County would send a letter stating that a new STR permit would be issued to any new owner of the Property who submitted a proper STR permit application ("Letter"). (*Id.* at 2-3, 5, 7.) On May 6, 2022, Plaintiffs' attorney sent back the shorter version of the document which Underwood signed ("Signed Document"); that version stated:

> Dear Mr. Underwood:
>
> Based on correspondence with your legal counsel on May 2, 2022, you agreed to withdraw your appeal of the automatic revocation of WSTR21-0420 and voluntarily surrender your Tier 1 permit on or before June 30, 2022. The parties involved hereby agree to this agreement. Please acknowledge by your signature that you agree to the below stipulations:
>
> 1. I agree to withdraw my appeal of automatic revocation of WSTR21-0420; and
>
> 2. I agree to voluntarily surrender my STR permit WSTR21-0420 by June 30, 2022, or upon transfer of title to a new owner should that occur prior to June 30, 2022.

(ECF No. 30 at 14.) The County sent Underwood the Letter providing assurances that an STR permit could still be issued for the Property after its sale. (*Id.* at 14-15; ECF No. 33-7.) The County also allowed Underwood to operate under the Permit until June 30, 2022, or the transfer of title to a new owner. (ECF Nos. 33 at 14-15; 33-6.)

Plaintiffs brought this action in January 2023. (ECF No. 1.) In response Counterclaimants raised their counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing. (ECF Nos. 30, 33.)

**III.   DISCUSSION**

Plaintiffs move to dismiss all counterclaims under Federal Rule of Civil Procedure 12(b)(6) on the grounds that a valid contract never existed due to a lack of consideration. (ECF No. 31 at 3-8.) "Whether a contract exists is a question of fact" under Nevada law, making the ultimate resolution of whether consideration existed inappropriate at this stage in the proceedings. *Anderson v. Sanchez*, 373 P.3d 860, 863 (Nev. 2016). Instead, the Court will determine whether Counterclaimants' allegations that the Signed Document

was a valid contract are "plausible on [their] face." *Ashcroft v. Iqbal*, 556 US 662, 678 (2009).

To have sufficiently pled that the Signed Document is a valid contract, Counterclaimants must have provided factual allegations showing that their agreement was "supported by consideration." *Cain v. Price*, 415 P.3d 25, 28 (Nev. 2018) (quoting *Jones v. SunTrust Mortg. Inc.*, 274 P.3d 762, 764 (Nev. 2012)). The Nevada Supreme Court has defined 'consideration' as "the exchange of a promise or performance, bargained for by the parties." *Jones*, 274 P.3d at 764. That performance may include forbearance. *See Kaufman v. Pub. Restroom Co.*, 133 Nev. 1037 (Nev. App. 2017).

Counter-defendants argue that the Signed Document is not supported by consideration. They are correct that, within the four corners of the Signed Document, there is no discussion of what the County will do in return for Underwood's 'voluntary' surrender of the Permit. (ECF No. 33-6.) But in emailed negotiations and the longer version of the withdrawal agreement, the County promised to allow a new buyer to immediately apply for and obtain a new STR permit, instead of requiring them to wait one year.[3] (ECF No. 33-4 at 2, 4, 7, 12.) Giving up these enforcement rights would constitute sufficient consideration if included in the Signed Document. *See Union Oil Co. of Cal. v. Terrible Herbst, Inc.*, 331 F.3d 735, 738 (9th Cir. 2003) (predicting under Nevada law that withholding the assertion of a non-frivolous claim constitutes sufficient consideration); *Kaufman*, 133 Nev. 1037 (forbearance is sufficient consideration). Thus, the question before the Court is whether this extrinsic evidence of the parties' intent may be considered as part of its terms.

When a contract is ambiguous and incomplete, "extrinsic evidence may be admitted to determine the parties' intent, explain ambiguities, and supply omissions."

---

[3] Counterclaimants argue that allowing Counter-defendants to continue renting out the Property through June 2022 and sending Counter-defendants the Letter also constituted consideration. (ECF No. 35 at 8-10.) Counter-defendants dispute these claims. (ECF Nos. 34 at 5-6; 36 at 3-5.) Because allowing the new buyer to immediately apply for and obtain a STR permit is sufficient consideration on its own, the Court need not resolve the dispute over the meaning of "automatic revocation" at this time.

*Ringle v. Bruton*, 86 P.3d 1032, 1039 (Nev. 2004). If the Signed Document is a contract, it is clearly incomplete; as Counter-defendants have repeatedly noted, all valid contracts "must be supported by consideration," and the Signed Document does not mention what consideration the County would provide. *Cain*, 415 P.3d at 28 (quoting *Jones*, 274 P.3d at 764). Moreover, the parties advance differing, facially reasonable interpretations as to what 'voluntarily' was intended to mean in the Signed Document. Counter-defendants argue that 'voluntarily' should be understood to mean 'performed without valuable consideration or legal obligation.' *See also Voluntary*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining 'voluntary' as "[w]ithout valuable consideration or legal obligation," or with "merely nominal consideration"). Counterclaimants, on the other hand, have submitted extrinsic evidence that the parties intended for 'voluntarily' to mean 'without being "impelled by outside influence."' *Id.* As the Signed Document is "reasonably susceptible" to both interpretations based on its text alone, the term 'voluntarily' is ambiguous. *Shelton v. Shelton*, 78 P.3d 507, 510 (Nev. 2003). The Court will thus look to the Signed Document's subject matter, the circumstances of its drafting and execution, and the parties' subsequent conduct to whether Counterclaimants have sufficiently pled that the parties' true, mutual intent was to be bound by the Signed Document. *See Ringle*, 86 P.3d at 1039 (instructing courts to "construe the contract as a whole" when determining the parties' intent); *Anvui, LLC v. G.L. Dragon, LLC*, 163 P.3d 405, 407 (Nev. 2007) ("The parties' intentions regarding a contractual provision present a question of fact.").

Counterclaimants provide the parties' emailed negotiations from early May 2022 to support their interpretation of the Signed Document. (ECF No. 33-4.) The email thread begins with Plaintiffs' attorney requesting an assurance that the new buyer of the Property could obtain a STR permit without Underwood's penalties following him. (*Id.* at 9.) Receiving this assurance was "an actual contingency on the sale of the home," and thus Underwood was willing to rescind his appeal and have his permit revoked if the buyer could obtain a STR permit upon purchase. (*Id.*) A County employee responded that he agreed to this proposal and, once Underwood sent a signed statement agreeing to

rescind his appeal and STR permit, the County would send a letter stating that a new STR permit would be issued to the new owner upon a proper application. (*Id.* at 7.) Plaintiffs' attorney responded with Underwood's unsigned statement agreeing not to contest the revocation of the Permit, in exchange for the County allowing rentals on the Property through June 30, 2022, and granting the buyer a new STR permit upon transfer of title. (*Id.* at 5.) In response, the County clarified some terms and requested that Underwood sign an attached agreement. (*Id.* at 4.) After Counter-defendants' attorney responded with edits to the agreement's wording, the County sent back the two versions of the withdrawal agreement, stating that the documents memorialize the understanding between Underwood and the County that "relinquishment will not be construed as revocation; and thus, will avoid the one-year bar for issuance of any new STR permits." (*Id.* at 2-3.) The County once again noted that, after Underwood sent a signed withdrawal agreement, the County would send a letter including the provisions about the issuance of a new STR permit. (*Id.*)

The next day, Underwood sent the County the Signed Document, which did not include additional language about the County's duties. (ECF Nos. 33 at 14; 33-6 at 2.) The County then sent the Letter assuring Underwood that, because he agreed to voluntarily surrender his STR permit, his permit would not be considered 'revoked' and would therefore not trigger the code provision barring issuance of any new STR permits for the Property for one year.[4] (ECF No. 33-7.) If these negotiations had not been undertaken, the County would have had authority to prohibit a new STR permit from being issued for the Property for one year. (ECF No. 33 at 14 (citing WASHOE CNTY. CODE § 110.390.40).)

---

[4]The Signed Document and Letter are both dated May 3, 2022; however, the parties' May 5, 2022, emails indicate that neither the Signed Document nor Letter had been sent yet. (ECF Nos. 33-4 at 2; 33-6; 33-7.) The Letter also notes that Underwood had agreed to surrender the Permit. (ECF No. 33-7.) Accordingly, for the purposes of the Motion, the Court will make a reasonable inference in favor of the non-moving party and assume that the Letter was not sent until the County received the Signed Document. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). ("[Courts] accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party.").

Counterclaimants have therefore plausibly alleged that, given the circumstances of its drafting and execution, the Signed Document was intended to be read as a valid contract. The County's promises to allow continued rentals of the Property, if intended to be incorporated into the Signed Document, are sufficient consideration. And 'voluntarily' could have reasonably been intended to mean 'without being compelled by the Board,' and, if the existence of consideration is proven, 'without consideration' could be an unreasonable interpretation of the term. *See Boga v. TMC Grp., Inc.*, 130 Nev. 1155 (Nev. 2014) ("[T]he alternative interpretation creating ambiguity must be reasonable."); *cf. Callahan v. Washoe Cnty. Sch. Dist.*, No. 74391-COA, at *2-3 (Nev. Ct. App. Apr. 26, 2019) (dismissing breach of contract claim because plaintiff's services were voluntary such that "no consideration has been identified or alleged that would support a conclusion that a legally enforceable contract existed"). Accordingly, the Motion is denied.

### IV.    CONCLUSION

The Court notes that the parties made several arguments and cited several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Plaintiffs' motion to dismiss the counterclaims against them (ECF No. 34) is denied.

DATED THIS 17th Day of April 2024.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE