UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| TROY UNDERWOOD, an individual and TRU RENO ENTERPRISE LP, a Domestic Limited Partnership,<br><br>                      Plaintiffs,<br>   v.<br><br>STEVE ORIOL, in his individual capacity, VAUGHN HARTUNG, in his individual capacity, WASHOE COUNTY, a political subdivision of the State of Nevada, MICHAEL LOADER, an individual, and DOES I-XX, inclusive,<br><br>                      Defendants.<br>_____<br>WASHOE COUNTY, a political subdivision of the State of Nevada,<br><br>                      Counter-claimant,<br>   v.<br><br>TROY UNDERWOOD, an individual and TRU RENO ENTERPRISE LP, a Domestic Limited Partnership,<br>                      Counter-defendants. | Case No. 3:23-cv-00029-MMD-CSD<br><br>ORDER |

**I.    SUMMARY**

Plaintiffs Troy Underwood and Tru Reno Enterprise LP sued Defendants for their involvement in regulating Plaintiffs' operation of a short-term property rental.[1] (ECF No. 29.) In response, Washoe County asserted counterclaims. (ECF No. 33 at 15-17.) Before

---

[1] Steve Oriol, Vaughn Hartung, Michael Loader, and Washoe County. The Court subsequently granted the parties' stipulation to dismiss claims against Michael Loader. (ECF No. 42.)

the Court are the parties' motions for summary judgment.[2] (ECF Nos. 43, 44.) As further explained below, the Court will grant Defendants' motion for summary judgement and deny Plaintiff's partial motion for summary judgment.

## II. BACKGROUND

### A. Factual Background[3]

In February 2018, Plaintiffs purchased a house located in Washoe County ("Property") for $2,100,000 to operate as a short-term rental[4] ("STR"). (ECF No. 43 at 3.) On May 1, 2021, Washoe County enacted new ordinances amending Washoe County Code ("WCC") on STRs to expand where they may operate within the county. (*Id.* at 2.) Washoe County introduced two types of permits as part of these ordinances: Tier 1 STR permits which allow for a maximum occupancy of 10 people and Tier 2 STR permits which allow for a maximum occupancy of 20 people. (*Id.* at 2-3.) Washoe County gave permit seekers until August 1, 2021, to obtain an STR permit before enforcing regulations. (*Id.* at 2.) Plaintiffs applied for a Tier 1 STR permit for the Property on July 31, 2021, but continued to operate the Property as a STR during the application review process. (*Id.* at 3.)

In October 2021, WCC Enforcement Officer Steve Oriol emailed Troy Underwood, a partner of Tru Reno, regarding Plaintiffs' failure to finish their STR application, as well as community complaints about overflowing garbage on the Property. (*Id.*) Oriol warned Underwood that if he failed to make meaningful progress within two weeks on the permit application, Oriol could issue a Stop Activity Order ("SAO") or Administrative Penalty Notice ("APN"). (*Id.*)

On November 2, 2021, the Property failed a Washoe County building inspection, causing further delay on the Tier 1 STR permit. (*Id.*) Oriol emailed Underwood that he

---

[2]The Court reviewed the corresponding responses and replies. (ECF Nos. 46, 47, 48, 49.)

[3]The following facts are undisputed unless otherwise noted. The Court only describes facts that are pertinent to its discussion of the motions for summary judgment.

[4]A STR is the rental of a home or accessory building for a short period of time.

2

must cancel all bookings and remove the Property's listing until he obtained the permit. (*Id.*) The Property failed another inspection on November 4, 2021, but passed on November 8, 2021. (*Id.*) Washoe County then issued Plaintiffs a Tier 1 STR permit. (*Id.* at 4.)

Plaintiffs applied for a Tier 2 STR permit for the Property on November 22, 2021. (*Id.*) In response, Washoe County notified neighboring property owners. (*Id.*) Washoe County received 17 letters, as well as phone calls and photos, opposing Plaintiffs' Tier 2 STR permit because of concerns regarding parking, noise, trash, and large events previously held at the Property. (*Id.*) Plaintiffs filed a written response, but Washoe County ultimately denied the Tier 2 STR permit because of the complaints received, impact on the surrounding property owners, and Plaintiffs' previous failure to comply with WCC. (*Id.*) Washoe County's denial stated that Plaintiffs could appeal the decision within 10 days. (*Id.*) Washoe County sent this denial to Underwood and his legal counsel. (*Id.*) They did not appeal. (*Id.*)

On December 7, 2021, Oriol issued an APN to Plaintiffs based on over-occupancy of the Property on November 25, 2021, November 26, 2021, and December 4, 2021. (*Id.*; ECF No. 43-2 at 2.) Oriol sent the APN via both regular and certified mail to the address on file for Plaintiffs' Tier 1 STR permit, and emailed Underwood that he mailed the APN. (ECF Nos. 43 at 4-5; 43-2 at 2.) Underwood responded to the email that same day. (*Id.* at 5.) The APN stated how Plaintiffs could appeal the decision, but they did not do so. (*Id.*) Oriol issued another APN on December 23, 2021, due to over-occupancy on December 18, 2021. (*Id.*) He again mailed a copy of the APN via regular and certified mail. (*Id.*) Plaintiffs again did not appeal. (*Id.*)

Washoe County issued Plaintiffs a SAO on January 28, 2022. (*Id.*) The SAO required Plaintiffs to immediately stop all STRs and advertising for groups of more than 10 people (*Id.*) Oriol posted the SAO on the door of the Property,[5] mailed a copy via

---

[5] While at the Property to post the SAO, Oriol witnessed another over-occupancy violation. (ECF No. 43 at 5.)

3

regular and certified mail, and emailed a copy. (*Id.*) The SAO stated that Plaintiffs could appeal, which Plaintiffs did not do. (*Id.*) Oriol issued two additional APNs based on over-occupancy on February 24, 2022, and March 1, 2022. (*Id.* at 5-6.) Again, Plaintiffs did not appeal either APN. (*Id.*)

On April 8, 2022, Washoe County began revocation proceedings for Plaintiff's Tier 1 STR permit. (*Id.* at 6; ECF No. 47-3 at 2.) The revocation letter alerted Plaintiffs that "failure to appeal this notice of revocation will result in final administrative action," "you must cease all Short Term Rental activity at this address," and another STR permit could not be issued on the same Property for one year upon revocation. (ECF No. 43-26 at 2.) Plaintiffs appealed the revocation but continued to operate the Property as a STR. (ECF No. 43 at 6.)

In April and May of 2021, Washoe County and Plaintiffs' counsel negotiated the appeal. (*Id.*) The parties' final agreement ("Agreement") stated that: "(1) Plaintiffs would be allowed to continue to operate their STR until June 30, 2022 or upon sale of the Property, if occurring before June 30, 2022; (2) Plaintiffs would be allowed to voluntarily relinquish the STR permit rather than have it revoked, which would have prevented issuance of a new STR permit on the Property for a period of one year regardless of ownership; (3) Washoe County agreed to provide Mr. Underwood with a letter for the potential purchaser of the Property providing assurances that the County would not consider the STR permit 'revoked' under WCC § 110.310.40(c)(1) which would allow the new owner to obtain an STR permit for the Property rather than being subject to the one-year waiting period; (4) Plaintiffs would formally withdraw the appeal of the notice of revocation; and (5) Washoe County would forego seeking revocation of the STR permit based on the past violations." (ECF No. 43-3 at 3.) On May 3, 2022, Plaintiffs signed the Agreement. (ECF No. 43 at 7.) Plaintiffs sold the property on or about June 3, 2022. (ECF No. 44 at 4.)

///

///

### B. Claims and Counterclaims

Plaintiffs then initiated this action. In their first amended complaint ("FAC"), Plaintiffs assert claims against Defendants under 42 U.S.C. § 1983 for violation of: procedural due process, the Takings Clause, and the First Amendment. (ECF No. 29.)[6] Washoe County asserted counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing. (ECF No. 33 at 15-17.)

## III. DISCUSSION

The parties raise overlapping arguments on the merits of Plaintiffs' claims and Washoe County's counterclaims, so the Court addresses their arguments together.[7] The Court begins its analysis with Defendants' threshold argument, challenging Plaintiffs' standing.

### A. Underwood's Standing

Defendants first argue that Underwood lacks prudential standing because Tru Reno, not Underwood, owned the Property. (ECF No. 43 at 7-8.) Defendants contend that shareholders lack standing to assert § 1983 claims based on harm to their corporation, and Underwood counters that he is a partner of Tru Reno and therefore has standing under the aggregate theory of partnership. (*Id.* at 8; ECF No. 46 at 20.) The Court agrees with Plaintiffs. The Nevada Supreme Court held that under the Uniform Partnership Act (NRS § 87.010), the language defining a partnership is "based upon a common law or aggregate theory of partnership," meaning that a partnership is not an entity separate from the people who compose it. *Watson v. G.C. Associates Limited Partnership*, 691 P.2d 417, 418 (Nev. 1984). Plaintiffs therefore have prudential standing to bring their claims because Underwood is a partner, not shareholder, of Tru Reno.

---

[6]The FAC continues to allege the three state law claims that the Court dismissed with prejudice (ECF No. 27 at 15-16) based on Washoe County's performance of discretionary functions or duties. (ECF No. 29 at 24-27 (asserting previously dismissed claims for tortious interference with contract, tortious interference with prospective economic advantage, and violation of Washoe County Code 125.140).)

[7]Because the Court agrees with Defendants as to the merits, the Court declines to address Defendants' arguments as to the individual defendants.

### B.  Procedural Due Process

Plaintiffs first argue that their Tier 1 STR permit is a property interest and Defendants failed to provide adequate procedural due process in depriving said interest. (ECF Nos. 46 at 3-12; 44 at 8-12.) Defendants counter that under Nevada law, the Tier 1 STR permit is a privilege rather than property right, and therefore Plaintiff received sufficient process. (ECF No. 47 at 6-7.) The Court agrees with Defendants.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "A section 1983 claim based upon procedural due process . . . has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *See, e.g.*, *Armstrong v. Reynolds*, 22 F.4th 1058, 1066 (9th Cir. 2022) (quoting *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Property interests are created from sources independent of the constitution, such as state law. *Id.*

Plaintiffs fail to demonstrate that WCC creates a property interest in the STR permits. First, a property interest does not exist where procedural requirements grant decisionmakers discretion, as opposed to those which mandate a defined administrative outcome. *See, e.g.*, *Nunez v. City of L.A.*, 147 F.3d 867, 873 n.8 (9th Cir. 1998) ("Procedural requirements can give rise to property interests only when they impose 'significant limitations on the discretion of the decision maker.'" (quoting *Goodisman v. Lytle*, 724 F.2d 818, 820 (9th Cir. 1984))); *Braswell v. Shoreline Fire Dep't*, 622 F.3d 1099, 1102 (9th Cir. 2010) (quotation omitted). But here, decisionmakers granting STR permit applications have wide discretion to do so. WCC provides decisionmakers with "methods for reviewing proposed uses which possess characteristics that require special appraisal"

to determine if the proposed uses "have the potential to adversely impact other land uses, transportation or services and facilities in the vicinity." WCC § 110.809.00. It also directs the decisionmaker to take into "consideration any testimony offered by affected property owners and the applicant, as well as characteristics of the property" in making their decision. WCC § 110.809.15. WCC therefore requires discretion from decisionmakers, rather than automatic approval, to mitigate harm to the surrounding community caused by STRs. As such, Plaintiffs' Tier 1 STR permit is not a property right.

Plaintiffs also lack entitlement to their permit because a property interest requires the right to retention and permanent status. *See Antuna v. City of Tucson*, 136 F. App'x 4, 5 (9th Cir. 2005). But Washoe County makes no promises that the STR permit is permanent: An "STR permit must be renewed and issued annually in order to advertise or operate." WCC § 110.319.10(h)(2). The renewal requirement indicates a lack of right of retention. Moreover, STR permits are not permanent because upon renewal, "standards are subject to change over time and there is no guarantee that an STR permit will be re-issued." *Id*.

Finally, WCC explicitly denies entitlement to STR permits: The operation of a STR within residential areas is a "'privileged' activity . . . and subject to specific enforcement and revocation procedures," and "[a]n STR permit is deemed a privileged permit subject to revocation. . . ." WCC §§ 110.319.30(a)(1); (h)(1). A STR permit is therefore a privilege, not a right.

The discretion afforded in granting, impermanence, and privileged nature of Plaintiffs' Tier 1 STR permit means that Plaintiffs have no legitimate claim of entitlement

to it as a property right, and thus received adequate process.[8] The Court will therefore grant Defendants' motion on this claim and denies Plaintiffs' motion as to this claim.

### C.   Taking Clause

Plaintiffs allege takings of their Tier 1 STR permit and STR contracts, and a depression in value of the Property because of these takings. (ECF No. 29 at 21.) Defendants argue that Plaintiffs' Takings Clause claim is not viable under the tests established in *Lucas v. S.C. Coastal Council*[9] or *Penn Central Transp. Co. v. New York City*[10]. (ECF No. 43 at 17-25.) Plaintiffs do not address Defendants' arguments, instead arguing that personal property and contracts are considered property for the purposes of the Takings Clause, and that the Nevada Constitution protects Underwood's ability to labor as a property interest.[11] (ECF Nos. 44 at 21-22; 46 at 12-15.)

Under the Takings Clause of the Fifth Amendment and as applied to state action through the Fourteenth Amendment, the government may not take property for public use without just compensation. *See, e.g.*, U.S. CONST. Amend V; *Penn Central Transp. Co.*, 438 U.S. at 122. The Takings Clause does not forbid the taking of private property but requires compensation when an event amounts to a taking. *See First English Evangelical*

---

[8]Defendants cite *Malfitano v. Cty. of Storey*, 396 P.3d 815 (Nev. 2017) to support their argument that a STR permit is not a property right. (ECF No. 48 at 7.) The Court finds *Malfitano* persuasive. In *Malfitano*, the Nevada Supreme Court found that temporary Nevada liquor licenses do not grant a legitimate claim of entitlement to a permanent Nevada liquor license because the temporary liquor license is a "privilege created and defined by [County] Code" and the relevant code did not require decisionmakers to automatically grant a temporary license holder's application for a permanent license. *Malfitano*, 396 P.3d at 820. Similarly, WCC says that holding a STR permit is a temporary and privileged activity that Washoe County retains discretion to grant or deny. *See* WCC § 110.319.10(h).

[9]505 U.S. 1003 (1992).

[10]438 U.S. 104 (1978).

[11]Plaintiffs do not raise Underwood's alleged lost ability to labor taking in the FAC. The Court will therefore only address the alleged contracts and permit taking. *See State of Nev. v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990).

*Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 314 (1987) (citations omitted).

The Fifth Amendment recognizes regulatory takings. *See, e.g., Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 625 (9th Cir. 2020). There are two types of regulatory takings: a *Lucas* taking, where "all economically beneficial use" of land is taken, and a *Penn Central* taking, where a property owner is not denied all economically beneficial use of their land in a taking and may be entitled to relief. *See Lucas*, 505 U.S. at 1016; *Penn Central Transp. Co.*, 438 U.S. at 124. Under *Penn Central*, a court considers: "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Murr v. Wisconsin*, 582 U.S. 383, 393 (2017) (citation omitted).

### a. Alleged STR Contracts Taking

Plaintiffs allege a Taking Clause violation in part through Oriol's November 2, 2021, directive to cancel all STR contracts. (ECF No. 29 at 21.) A valid contract may create a property right under the Fifth and Fourteenth Amendment. *See Lynch v. United States*, 292 U.S. 571, 579 (1934). However, the Takings Clause does not apply when governmental interference with a party's performance under a contract does not directly overtake the contract. *See Omnia Commercial Co. v. United States*, 261 U.S. 502, 510-11 (1923) ("[F]or consequential loss or injury resulting from lawful governmental action the law affords no remedy . . . . As a result of this lawful governmental action the performance of the contract was rendered impossible. It was not appropriated, but ended.").

Here, like in *Omnia Commercial Co.*, "the Government did not appropriate what the claimant owned but only ended his opportunity to exploit a contract." *United States v. Grand River Dam Auth.*, 363 U.S. 229, 236 (1960) (interpreting *Omnia Commercial Co.*). Oriol directed Plaintiffs to cancel their contracts not to overtake them, but rather in response to Plaintiffs repeated violation of STR regulations. (ECF No. 43-2 at 2.) The Tier

9

1 STR permit made Plaintiffs subject to such enforcement and revocation under WCC § 110.319.30(a)(1). Therefore, Plaintiffs fail to proffer evidence of a taking in relation to the STR contract cancellations.

### b. Alleged Tier 1 STR Permit Taking

Regarding the alleged taking of the Tier 1 STR permit, analysis under *Lucas* is inapplicable because *Lucas* applies to "the extraordinary circumstance when no productive or economically beneficial use of land is permitted." *Lucas*, 505 U.S. at 1017. But here, Plaintiffs had economically beneficial use of the Property because they sold it for $2,750,000. (ECF No. 43-35 at 2.) Plaintiffs also retained beneficial use of the land because they were still free to live in the Property or lease it for long-term rentals.

The Court will therefore analyze the alleged taking under *Penn Central*. The first factor considers "the economic impact of the regulation on the claimant." *Penn Central Transp. Co.*, 438 U.S. at 124. To determine impact, the court must compare the value taken via regulation with the remaining value. *See Bridge Aina Le'a, LLC*, 950 F.3d at 630-31. "Although there is 'no litmus test' . . . [the court's] value comparison again aims 'to identify regulatory actions that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owners from his domain.'" *Id.* at 631 (citation omitted).

Here, Plaintiffs allege that, by revoking their Tier 1 STR permit, Defendants' actions amounted to a taking because doing so depressed the value of the Property and by extension, Tru Reno Enterprises. (ECF No. 29 at 21.) However, Plaintiffs ultimately made a profit on the Property: They purchased it for $2,100,000 and sold it about five years

later for $2,750,000, for an approximate 30% increase in value.[12] (ECF Nos. 43-8 at 6; 43-35 at 2.) The economic impact did not therefore constitute a taking.

The second factor is "the extent to which the regulation has interfered with distinct investment-backed expectations." *Penn Central Transp. Co.*, 438 U.S. at 124. "To form the basis for a taking claim, a purported distinct investment-backed expectation must be objectively reasonable." *Colony Cove Props. v. City of Carson*, 888 F.3d 445, 452 (9th Cir. 2018) (citations omitted). Unilateral expectations or abstract needs cannot form the basis of a claim that the government interfered with property rights. *See Bridge Aina Le'a, LLC*, 950 F.3d at 634.

Plaintiffs fail to proffer evidence that they had an objectively reasonably investment-backed expectation of using the Property for unrestricted STRs. Washoe County repeatedly indicated that STRs would be regulated: from 2019 to 2021, it developed a regulation framework for STRS, held public meetings on the proposed regulations, and gave applicants a three-month grace period at enactment to obtain STR permits. (ECF No. 43-5 at 2-41.) Considering Washoe County's preparation for STR regulation and STR permits, as well as their communication with the public, it would not be reasonable for Plaintiffs to expect to use the Property for STRs with no regulations. This factor therefore weighs against Plaintiffs.

The final *Penn Central* factor is "the character of the governmental action." *Penn Central Transp. Co.*, 438 U.S. at 124. "A 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government

---

[12]Plaintiffs allege that the Property was valued at both $4,040,000 and $3,500,000 in different parts of their briefing. (ECF Nos. 29 at 13; 44 at 21,) By doing so, Plaintiffs rely on evidence challenged by Defendants for failure to authenticate. (ECF No. 47 at 2.) Even accepting this evidence, Plaintiffs fail to proffer sufficient evidence that a taking occurred because a "mere diminution in the value of property, however serious, is insufficient to demonstrate a taking." *Concrete Pipe & Prods. v. Constr. Laborers Pension Tr.*, 508 U.S. 602, 645 (1993) (citations omitted). A diminution in property value of 75% to 92.5% does not constitute a taking, and no court has found a taking where diminution in value was less than 50%. *See Colony Cove Props.*, 888 F.3d at 451. Taking the higher appraisal, the selling price of $2,7500,000 compared to the alleged $4,050,000 constitutes a 32% decrease in value—a percentage not high enough to constitute a taking.

11

1  than when interference arises from some public program adjusting the benefits and
2  burdens of economic life to promote the common good." *Colony Cove Props.*, 888 F.3d
3  at 454 (quoting *Penn Central Transp. Co.*, 438 U.S. at 124). Land use regulations that
4  impact real property interests are permitted where the government reasonably concludes
5  that the health, safety, morals, or general welfare would be promoted by the prohibition.
6  *Penn Central Transp. Co.*, 438 U.S. at 125.

7      WCC demonstrates an interest in promoting the common good because Washoe
8  County concluded that the STR regulations were necessary to support "safe, secure, and
9  healthy communities." (ECF No. 43-7 at 3.) WCC further states that STR regulations
10 attempt to decrease "the potential nuisance impacts related to parking, garbage, noise,
11 and higher occupancy" and the "dangers posed to surrounding properties" when an STR
12 does not pass "required inspections for public health, safety, or general welfare standards
13 applicable to STRs." WCC § 50.308(1). Taken together, Washoe County's governmental
14 action is rooted in protecting the community, and therefore is government interference
15 supporting the common good. Accordingly, the third factor weighs against Plaintiff.

16     In sum, the Court will grant Defendants' motion on the Takings Clause claim and
17 will deny Plaintiffs' motion as to this claim.

18     **D.**    **First Amendment**

19     Plaintiffs further allege that the Tier 1 STR permit and WCC § 110.304.15(d)
20 violated Plaintiff's fundamental right to assemble because it restricted the right of more
21 than ten people to assemble at the Property. (ECF No. 29 at 23-24.) Plaintiffs clarify in
22 their briefings that they bring a facial challenge,[13] arguing that WCC § 110.304.15(d) is a
23 "blanket prohibition against individuals from associating or assembling on private
24 property." (ECF Nos. 44 at 22, 24; 46 at 15.) Defendants respond that Plaintiffs do not
25 have standing to assert a facial challenge because they lack injury. (ECF No. 48 at 16-
26 18.) The Court agrees with Defendants.

---

[13] Plaintiffs do not sufficiently allege in the FAC that this claim is a facial challenge. Defendants note this discrepancy (ECF No. 47 at 21) but do not move for summary judgment on this basis. The Court will accordingly analyze the claim as a facial challenge.

"A facial challenge to a statute requires a plaintiff to 'show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical.'" *Bock v. Washington*, 33 F.4th 1139, 1146 n.2 (9th Cir. 2022) (quoting *4805 Convoy, Inc. v. City of San Diego*, 183 F.3d 1108, 1111-12 (9th Cir. 1999)).

Plaintiffs cannot make this showing. It is undisputed that Plaintiffs sold the Property and "related STR business" on June 3, 2022, before filing the initial complaint on January 23, 2023. (ECF Nos. 1.) Plaintiffs also do not allege that they currently hold any STR permit within Washoe County. But Article III standing is determined on the date the complaint is filed. *See, e.g.*, *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 779 F.3d 1036, 1068-69 (9th Cir. 2015) (citing *Wilbur v. Locke*, 423 F.3d 1101 (9th Cir. 2005)). That said, and as noted, Plaintiffs did not own the Property when they filed their complaint. Moreover, Plaintiffs do not proffer evidence that they are presently threatened by WCC; not only do they no longer own the Property or have a STR permit, but they do not claim that they intend to engage in a course of conduct proscribed by WCC § 110.319.15(a)(4) in the future. *See Lopez v. Candaele*, 630 F.3d 775, 786 (9th Cir. 2010) ("The touchstone for determining injury in fact is whether the plaintiff has suffered an injury or threat of injury that is credible . . . ." (citing *Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 298 (1979))). Consequently, Plaintiffs lack Article III standing to bring a facial challenge to WCC § 110.304.15(d), and the Court will grant Defendants' motion on this claim and will deny Plaintiff's motion as to this claim.

### E.  Breach of Contract Counterclaim

Plaintiffs argue that they are entitled to summary judgment on Washoe County's breach of contract claim[14] because the parties did not enter into a contract, and if they did, the contract was not breached nor did damages result. (ECF No. 44 at 24-26.) Washoe County counters that the Agreement was a valid contract because the parties

---

[14] Plaintiffs appear to directly address only the breach of contract claim in their motion for summary judgment. (ECF No. 44 at 24-26.)

13

exchanged consideration, Plaintiffs breached the Agreement by filing this lawsuit, causing damage. (ECF No. 47 at 26-30.) The Court again agrees with Washoe County.

Nevada law requires the party asserting a breach of contract claim to show: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damage from the breach. *See, e.g.*, *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006) (citing *Richardson v. Jones*, 1 Nev. 405, 405 (Nev. 1865)). Principles of contract law govern the interpretation of settlement agreements. *See May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). Plaintiffs first argue that the Agreement was not an enforceable contract because it lacked consideration. (ECF No. 44 at 24.) They contend that the provisions of the written agreement, including requiring Underwood to "voluntarily surrender" the Tier 1 STR permit and requiring nothing from Washoe County, meant that no valid consideration existed. (*Id.*) Washoe County counters that consideration existed because the County provided Underwood with a letter for the potential Property purchaser assuring them that the County would not consider the Tier 1 STR permit revoked, and the County promised not to seek revocation based on past violations. (ECF No. 47 at 27-28.)

"Basic contract principles" note the requirement of consideration. *Certified Fire Prot. Inc. v. Precision Constr. Inc.*, 283 P.3d 250, 255 (Nev. 2012) (citation omitted). "Consideration is the exchange of a promise or performance, bargained for by the parties." *Cain v. Price*, 415 P.3d 25, 28 (Nev. 2018) (citation omitted).

The Agreement offered consideration on both sides: Underwood withdrew his appeal and voluntarily surrendered his Tier 1 STR permit, and, in exchange Washoe County agreed not to consider the permit revoked, which would allow a future owner of the Property to obtain an STR permit without being subject to the one-year waiting period required by WCC § 110.319.40 upon revocation. (ECF Nos. 43-3 at 3; 44-26 at 4; 47-31 at 2.) It is not the Court's role to determine the adequacy of consideration offered—rather, existence of valid consideration is sufficient. *See* RESTATEMENT (SECOND) OF CONTS. § 79 (AM. L. INST. 1981); *see also Kelly-Springfield Tire Co. v. Bobo*, 4 F.2d 71, 72-73 (9th Cir.

14

1925). The parties exchanged promises, and by extension, consideration.[15] Indeed, Washoe County's promises presumably made the Property more valuable to prospective purchasers. The Court will also deny Plaintiffs' motion to the extent it is based on their unpersuasive breach of contract argument. Plaintiffs argue that breach is impossible because the Agreement did not include a release of claims. (ECF No. 44 at 25.) But Washoe County's claim is not premised on a release of claims.

Breach is the material failure to perform a duty imposed by a contract. *See, e.g.*, *State Dep't of Transportation v. Eighth Judicial Dist. Court*, 402 P.3d 677, 682 (Nev. 2017). Here, Washoe County insists that a critical term of the Agreement was Plaintiffs' surrender of the Tier 1 STR permit, and in bringing this lawsuit, Plaintiffs breached the Agreement by alleging that Washoe County instead revoked said permit. (ECF No. 47 at 28.) A lack of release of claims does not extinguish Washoe County's cause of action. By bringing this lawsuit, Plaintiffs challenge the core of the Agreement itself and forced the County to defend itself, causing harm to Washoe County in that—at a minimum—the County has defended this action. A rational trier of fact may find that a breach, resulting in harm, occurred here.

In sum, the Court will deny Plaintiffs' motion for summary judgment on Washoe County's counterclaims.

**IV.    CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

---

[15] Underwood argues that the word "voluntarily" appearing in the Agreement means that no consideration exists. (ECF No. 44 at 24.) The Court addressed the ambiguity of "voluntarily" in its order on Plaintiffs' motion to dismiss, stating that "'voluntarily' could have reasonably been intended to mean 'without being compelled by the Board.'" (ECF No. 40 at 44-7.) Setting aside Plaintiffs' argument, consideration still existed on Underwood's part because he agreed to withdraw his appeal. (ECF No. 44-26 at 4.)

It is therefore ordered that Defendants' motion for summary judgment (ECF No. 43) is granted.

It is further ordered that Plaintiffs' motion for partial summary judgment (ECF No. 44) is denied.

It is further ordered that the only remaining claims for trial are Washoe County's counterclaims.

It is further ordered that the Court finds it appropriate under LR 16-5 to refer this case to United States Magistrate Judge Craig S. Denney for a settlement conference. If this case does not settle at the settlement conference, the joint pretrial order is due within 30 days of the settlement conference.

DATED THIS 10th Day of February 2025.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE